# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MARK HANDY, JR.,

      Plaintiff,

      v.

JANETTE CLARK, RNP,
WEXFORD HEALTH SOURCES, INC.,
DENNIS MARTIN, R.N.,
BERNICE SWAN, R.N.,
TERRI DAVIS, P.A.,
ASRESAHEGN GETACHEW, M.D.,
RICHARD J. GRAHAM, *Warden*, and
DAYENA M. CORCORAN, *Commissioner*,[1]

      Defendants.

Civil Action No. TDC-19-1200

## MEMORANDUM OPINION

Plaintiff Mark Handy, Jr., currently incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed a civil action pursuant to 42 U.S.C. § 1983 against Wexford Health Sources, Inc. ("Wexford"), Janette Clark, Dennis Martin, Bernice Swan, Terri Davis, and Dr. Asresahegn Getachew (collectively, the "Medical Defendants"), as well as Warden Richard J. Graham, and Commissioner of Correction Dayena M. Corcoran. In his Second Amended Complaint, Handy asserts a violation of his constitutional rights arising from Defendants' alleged failure to provide timely and adequate medical care for facial bone and nasal fractures and a dislocated shoulder while he was housed at Western Correctional Institution ("WCI") in Cumberland, Maryland. Pending before the Court is the Medical Defendants' Motion to Dismiss

---

[1]  The Clerk shall amend the docket to add Defendants Dennis Martin, R.N.; Bernice Swan, R.N.; Terri Davis, P.A.; Dr. Asresahegn Getachew; Warden Richard J. Graham; and Commissioner Dayena M. Corcoran.

or, in the Alternative, Motion for Summary Judgment, which is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On January 29, 2018 at approximately 1:26 p.m., Handy was brought to the WCI medical unit following a possible altercation. An examination by Nurse Dennis Martin revealed that Handy's nose and left eye were swollen, and Handy had several abrasions on the knuckles of his right fist. Martin disinfected Handy's wounds, applied band aids to his knuckles, and gave him a bag of ice to help reduce the swelling in his face. Martin referred Handy for evaluation by a medical provider. Later that day, Handy received x-rays of his face that revealed a minimally displaced nasal bone fracture.

At around 8:43 p.m., Handy returned to the medical unit complaining of left shoulder pain from the incident, which he described as a fall from his bunk. Handy stated that he had not previously realized that his shoulder was injured and asked the nurse on duty to pop his shoulder back into place. On examination, Handy had pain in his shoulder joint, but it was deemed to be in good alignment. Handy was referred for a physician consultation and x-rays of his shoulder. Handy also reported that he was having difficulty breathing through his fractured nose.

On January 30, 2018, Handy was examined at the WCI infirmary by Dr. Ava Joubert-Curtis. Dr. Joubert-Curtis noted that Handy's left eye was swollen shut and bruised, and he had "obvious nasal deformity and deviation." WCI Med. Records at 12, Mot. Dismiss Ex. 2, ECF No. 26-3. Handy's left shoulder was painful to move, and he reported that he had a history of left shoulder dislocations. After consulting with another physician, Dr. Joubert-Curtis decided to have

Handy transported to the Emergency Department at Western Maryland Health Systems ("WMHS") for further evaluation of a possible orbital fracture and left shoulder dislocation.

Upon arrival at WHMS, Handy received a CT scan of his facial area, which revealed that he had multiple facial bone fractures, including through his nasal bones bilaterally, through the inferior left orbital wall, and through the posterior left orbital wall. An x-ray of Handy's shoulder revealed no definite fractures or dislocations. As treatment, Handy received an injection of lidocaine for his shoulder pain. He was then returned to WCI with instructions not to blow his nose and to follow up with an outpatient maxillofacial surgeon for his facial fractures. Once back at WCI, an examining nurse noted the instructions from WHMS that Handy receive a follow-up consultation with either an ear, nose, and throat physician or a maxillofacial surgeon. That evening, Handy's eye area was markedly more bruised, and he was kept in the WCI infirmary overnight.

On January 31, 2018, Handy's left eye was still swollen shut, and he rated his pain at 7 out of 10. Later that evening, Handy was discharged to his housing unit with instructions to follow up in three days and to return for x-rays in a week. Handy was prescribed Tramadol and Ibuprofen to address the pain.

On February 11, 2018, approximately 12 days after he was instructed to see a maxillofacial surgeon, Handy submitted an administrative remedy procedure complaint ("ARP") to the Warden seeking to be examined by a specialist. He reported that he remained in significant pain, particularly in his left eye, and that blood was draining from his nose into his mouth. He also stated that the medication he had received was causing blood to appear in his stool and that he had not received antibiotics. On February 13, 2018, Handy received a follow-up x-ray of his facial

3

injuries which confirmed that he had a fracture of the nasal bone. No specific findings were made about his other facial bone fractures.

On February 24, 2018, during a discussion of his x-ray results, Handy told Nurse Janette Clark that he had difficulty breathing through his nose. Clark stated that she would submit a request for a consultation with the shock trauma unit about Handy's nose and told Handy to follow up in 10 days if his condition did not improve. Clark also provided Acetaminophen to Handy as an additional pain medication. On February 27, 2018, Handy submitted another ARP complaining that Clark had not taken his condition seriously and stating that there was a loose bone moving up and down in the left side of his nose and that he continued to have blood draining from his nose into his mouth.

On March 15, 2018, in response to the consultation request, Wexford's utilization management program, known as Collegial Review ("Collegial"), inquired whether Handy had a septal deviation that blocked the nasal passage in his nose. On March 18, 2018, Clark responded that Handy had a severe deviation in his right nostril with occlusion, which resulted in an inability to breathe through the right side of his nose. Clark also prescribed a low dose of Tramadol after Handy reported that his other pain medications were inadequate. Also in March 2018, Handy's appointed counsel for a post-conviction petition spoke to the Medical Department at WCI on his behalf and was told that a decision would be made by March 29, 2018 on whether to send him to a hospital for surgery or additional treatment.

On April 11, 2018, Handy placed a sick call request to inquire about the status of his consultation for facial trauma. He was advised that his consultation was being reviewed. On April 13, 2018, after the Assistant Warden had dismissed his first ARP, Handy filed an appeal of the denial of that ARP to the Commissioner of Correction and reported that he was in extreme pain as

4

a result of the broken bones in his face and his shoulder injury and was seeking adequate medical care. On April 25, 2018, after his second ARP was denied, he filed an appeal to the Commissioner of Correction of that ARP as well. On April 27, 2018, he sent another sick call request about the "extreme pains in my face [and] nose." Sick Call Requests at 7, Mot. Dismiss Ex. 1, ECF No. 26-2.

Also in April 2018, Handy requested assistance from the office of U.S. Rep. Elijah E. Cummings of Maryland, which sent an inquiry to the Commissioner on April 17, 2018. During a chronic care visit on May 8, 2018, Handy was informed that his surgical consultation had been approved, and that an appointment was being scheduled that day. Although Handy requested an increase in Tramadol because the other medications were not effective, he was denied because Tramadol is an opioid that is no longer used to treat chronic pain. On May 11, 2018, three days after the surgical consultation was first approved, Commissioner Corcoran wrote to Congressman Cummings to assert that Handy's medical needs were being met.

On June 19 and June 22, 2018, Handy filed additional sick call requests about the increasing pain in his face and separate pain in his ankle. On June 19, Dr. Asresahegn Getachew saw Handy. Dr. Getachew noted that Handy was scheduled for a surgical consultation at the University of Maryland Medical System ("UMMS") and requested another CT scan of Handy's face, to assess the healing of the fractures.

On July 21, 2018, Handy returned to the medical unit with complaints of facial pain and difficulty breathing through his nose. Nurse Beverly McLaughlin noted that his nasal condition was worsening. After checking, McLaughlin learned that there were no records of a pending surgical consultation or a request for a CT scan. She then resubmitted the previous consultation

requests, temporarily increased Handy's prescription for Tramadol, and provided a saline spray for Handy's clogged nostril.

On July 24, 2018, Handy returned to WMHS for the facial CT scan. The scan revealed evidence of the multiple fractures in his nasal bone and his left orbital wall and maxillary wall, with no acute abnormalities. Handy continued to have a septal deviation in his nose.

Handy saw Clark on August 11, 2018 for a review of the CT scan report. Handy again reported that he had difficulty breathing. Although Clark stated that a surgical consultation at UMMS had been approved, that appointment remained pending.

Finally, on October 4, 2018, Handy had a consultation with a plastic and reconstructive surgery specialist and was recommended for surgery to repair his nasal fracture and deviated septum. Two days later, Handy submitted a sick call request seeking a follow-up appointment at WCI to discuss that consultation. On November 6, 2018, during a chronic care assessment at WCI, a surgical consultation was formally requested. On November 11, 23, and 26, 2018, Handy submitted sick call requests complaining of significant and worsening facial pain, stating that he could not breathe out of his nose because it is always "stop[p]ed up," reporting that he had nasal bleeding when he tried to unclog his nose, and asserting that he had not received his pain medication. Sick Call Requests at 16-18. He also asked about the status of his surgical appointment. On November 29, 2018, a medical provider informed Handy that Excedrin, Tramadol, and Tylenol would be provided for his facial pain. On November 30, 2018, Dr. Getachew told Handy that his surgical consultation had been requested on November 6, 2018.

In the first week of December 2018, Handy submitted two more sick call requests reporting that his face "really hurt bad" and that his nose would bleed whenever he sneezed, and asking about the status of his surgery. Sick Call Requests at 15. On December 15, 2018, Dr. Getachew

6

saw Handy, who again reported facial and nose pain. Dr. Getachew did not observe drainage or swelling and advised Handy to keep his appointment once it was scheduled. On December 26, 2018, during a pain management panel, Handy's prescription for Tramadol was discontinued over his objection to avoid problems with dependency, tolerance, and increased pain sensitivity. Other medications were ordered in its place.

On January 4, 2019, Handy was transferred from WCI to ECI. On January 10, 2019 and January 16, 2019, he submitted sick call requests complaining about his inability to breathe, nose bleeding, and facial pain and asking about the status of his surgery. On January 31, 2019, Handy was seen for an evaluation at ECI, at which time his pain medications were reassessed and pre-operative laboratory tests were ordered in anticipation of his surgery.

On February 6, 2019, Dr. Paul Matera cleared Handy for surgery after a preoperative evaluation. Handy's surgery, a septorhinoplasty, took place at UMMS on February 8, 2019. At a February 11, 2019 follow-up visit at ECI, Handy stated that he no longer had difficulty breathing and rated his pain at 4 out of 10. During a February 21, 2019 follow-up visit with the surgeon at UMMS, Handy stated that his facial pain was tolerable, and he had had only one sneeze with bloody drainage after his procedure. Upon evaluation, Handy's nasal dorsum appeared to be straight and symmetrical, and there was minimal airway obstruction.

On April 24, 2019, Handy filed the present case. He filed an Amended Complaint on June 21, 2019 and a Second Amended Complaint on July 17, 2019. Although Handy initially alleged race discrimination in the provision of medical care to inmates, in the Second Amended Complaint, Handy alleges only that Defendants failed to provide adequate medical treatment for his facial and shoulder injuries, in violation of his Eighth Amendment rights. He seeks $100,000 in damages.

7

## DISCUSSION

In their Motion, the Medical Defendants argue that: (1) the claim against Wexford should be dismissed because there is no vicarious liability under § 1983; (2) Handy has failed to state facts sufficient to state a plausible claim for relief; and (3) the evidence does not support a finding that Defendants acted with deliberate indifference to a serious medical need. In response, Handy focuses on the inadequate provision of medication, including one instance in which the medical staff failed to continue his antibiotic treatment after returning from WMHS in February 2018. He also claims that Defendant Nurse Bernice Swan fabricated reports by stating that Handy was "disruptive and argumentative" in order to avoid giving him medication. Opp'n Mot. Dismiss at 2, ECF No. 28.

### I.    Legal Standards

The Medical Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.

8

2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of the Medical Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or other equivalent document, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Handy has not filed an affidavit or declaration under Rule 56(d) or otherwise stated a specific need for discovery. Therefore, on the issues for which consideration of exhibits is required, the Court will construe the Motion as seeking summary judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*,

9

346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    Race Discrimination

In his original Complaint and First Amended Complaint, Handy alleged that Defendants discriminate against African American inmates in the provision of medical care. In the Second Amended Complaint, however, Handy makes no reference to this claim, so it is no longer part of the operative complaint and is not properly before the Court. Even if Handy, who is self-represented, intended to reassert this allegation, the Court would dismiss the allegation at this stage. The conclusory allegations in the original Complaint do not offer any specific facts to support the claim that any delays in medical treatment are racially motivated. *See Iqbal*, 556 U.S. at 678. Any such claim is therefore dismissed without prejudice. *See* 28 U.S.C. § 1915A(b) (2018).

## III.   Wexford

The Medical Defendants seek dismissal of Wexford as a defendant because it cannot be held vicariously liable under 42 U.S.C. § 1983 for the actions of its employees. Under § 1983, individuals may sue in federal court "[e]very person" who, under color of state law, deprives them of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Private companies that employ individuals acting under color of state law are considered "persons" for the purposes of § 1983, but they cannot be held liable for violating a plaintiff's rights solely because they employ an individual who committed an unlawful act. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, they can be sued under § 1983 only if the violation

results from the company's custom or policy. *Id.*; *cf. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that there is no vicarious liability against local government entities for § 1983 claims).

Thus, while Wexford is responsible for the delivery of medical care in a prison setting, absent a particular custom or policy that led to the deprivation of Handy's constitutional rights, Wexford cannot be held liable for his claims under § 1983. *See Austin*, 195 F.3d at 728. Here, Handy has alleged no specific custom or policy of Wexford that resulted in the loss of any rights. Accordingly, the claim against Wexford will be dismissed. Because there has been no showing that Handy cannot allege facts sufficient to support the existence of such a custom or policy, this claim will be dismissed without prejudice.

## IV.   Eighth Amendment

In the Second Amended Complaint, Handy asserts a violation of the Eighth Amendment for deliberate indifference to his health and safety based on the failure to adequately treat his facial and shoulder injuries sustained in January 2018. The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even

11

a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Here, Handy suffered serious injuries, including multiple fractures in his face and nose, on January 29, 2018. The injuries were sufficiently apparent that Dr. Joubert sent him to the Emergency Department at WHMS. The fractures in his nose and facial bones were confirmed by x-rays, and Handy was returned to WCI with instructions that he receive a consultation with a maxillofacial surgeon for evaluation of his facial injuries. Although the Medical Defendants argue

that Handy's primary injury, a broken nose, is not an objectively serious medical condition, Handy's condition was plainly more serious than a typical case. Not only did he have a septal deviation that required surgery, but throughout 2018 he had difficulty breathing, involuntary bleeding from his nose, and significant pain. At a minimum, there is a genuine issue of material fact whether he had an objectively serious medical need. *Cf. Villalobos v. W. Reg'l Jail*, No. CV 3:18-01385, 2019 WL 2574202, at *8 (S.D. W.Va. May 24, 2019) (questioning whether a *nondisplaced* nose fracture without continuous severe pain constituted a serious medical condition).

As to whether Defendants were subjectively aware of the risk to Handy's health but disregarded it, Handy has not identified direct evidence of a specific intent to withhold or delay medical care, but the course of events is highly troubling. Despite the initial recommendation by WMHS for a surgical consultation to address his facial injuries, Handy received no such consultation for almost eight months. In the interim, Handy repeatedly complained about severe pain in his face. He also reported specific problems with his broken nose, including that he had trouble breathing out of his nose, he had nasal bleeding, and that there was loose bone moving around inside his nasal area. Nevertheless, WCI medical personnel took no action to consider a surgical consultation until mid-March 2018. When the Wexford decisionmakers, Collegial, inquired about the nature of his nose fracture, Clark reported that Handy had a severe deviation in his right nostril with occlusion, which resulted in an inability to breathe through the right side of his nose. Although a surgical consultation was apparently approved in May 2018, and a request for another CT scan was made in June 2018, those actions came only after Handy filed several ARPs and enlisted the assistance of a congressman to make an inquiry to the Commissioner about his status. Even then, no surgical consultation or CT scan actually occurred. Rather, in July 2018,

during another visit by Handy relating to his facial pain and difficulty breathing through his nose, a nurse observed that his nasal condition was worsening but there were no records of a pending surgical consultation or a request for a CT scan. She then resubmitted the previous consultation requests.

In the end, no surgical consultation actually occurred until October 2018. When that consultation resulted in a recommendation for surgery, Handy received no pre-operative appointments or the actual surgery for another four months, until February 2019. During the intervening months, Handy continued to report severe pain, bleeding from his nose, and an inability to breathe. Notably, no such appointments or surgery were forthcoming until after Wexford's contract to provide medical services to Maryland prisoners expired at the end of December 2018, and after Handy was transferred from WCI to ECI in January 2019.

Viewed in the light most favorable to Handy, the limited record before the Court shows that there is at least a genuine issue of material fact whether WCI medical personnel were subjectively aware of the severity of Handy's nose and facial injuries, based on the initial recommendation of a surgical consultation, the x-rays, the observations of nurses, and Handy's repeated reports of his symptoms. Where Handy received no surgery for over a year, and did not even receive a surgical consultation for almost eight months after it was first recommended, the unexplained delay in addressing Handy's reported pain, bleeding, loose bone, and inability to breathe creates a genuine dispute of fact on whether there was deliberate indifference to his serious medical need. Additional evidence to be obtained through discovery is necessary in order to permit a full adjudication of this claim. The Court will therefore deny the Motion.

14

## CONCLUSION

For the foregoing reasons, the Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to any race discrimination claim and the claim against Wexford, both of which will be dismissed without prejudice, and will be otherwise denied. A separate Order shall issue.

Date:   September 11, 2020

THEODORE D. CHUANG
United States District Judge